IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Ellen Branson,

        Plaintiff,

v.

Commissioner Social Security Administration,

        Defendant

No. CV 04-1121-MO

OPINION AND ORDER

MOSMAN, J.,

Claimant Ellen Branson seeks judicial review of the Commissioner of the Social Security Administration's (SSA) final decision finding that she is not disabled and therefore ineligible for Supplemental Security Income (SSI) payments. Ms. Branson argues that the Commissioner erred by (1) finding that she lacked credibility, (2) giving little weight to medical evidence supporting her claim, (3) rejecting lay testimony supporting her claim, (4) improperly assessing the severity of her impairments, and (5) providing the vocational expert (VE) with a defective hypothetical. Exercising jurisdiction under 42 U.S.C. § 405(g), the court conducted a thorough and careful review of the record and AFFIRMS the Commissioner.

I.     Background

    A.     Administrative History

Ms. Branson filed an application for SSI on January 29, 2001. The application was denied in the first instance and on reconsideration. On August 6, 2003, an Administrative Law

PAGE 1 - OPINION AND ORDER

Judge (ALJ) held a hearing, and Ms. Branson was represented by counsel. Ms. Branson and Francine Gomez, a VE, testified at the hearing. The ALJ issued a decision on October 13, 2003, finding Ms. Branson is not disabled and therefore ineligible for benefits. That decision became the agency's final decision on June 14, 2004, when the Appeals Council denied her request for review.

### B. Ms. Branson's Testimony

At the time of the hearing, Ms. Branson was a 41-year-old mother of four children, three of whom lived with her. She earned her high school equivalency when she was 19, and her work experience includes "motel housekeeper, restaurant waitress, restaurant cook, bartender, dishwasher, cook breakfast [sic], housekeeper." Tr.[1] at 432. Since December 1998, she has been a recovering drug and alcohol user. Ms. Branson testified she has problems with anxiety and depression, a snapping scapula, migraine headaches, and asthma that prevent her from doing basic daily activities, including cleaning and grocery shopping, and her prior hobbies of fishing, crabbing, and cooking. She stated that she has approximately five to ten bad days a month due to her depression where she cannot leave her house, and that the pain in her shoulder makes her arms go numb and her hands shake. She claims these problems prevent her from working.

### C. Medical Evidence

In late 2000 through early 2001, Dr. Linda Bufton examined Ms. Branson in relation to her pain and numbness complaints. Dr. Bufton reported that "[o]n physical examination [Ms. Branson] gives a weak grip with the right hand and becomes tremulous as though she is really

---

[1] Citations to the official transcript of record submitted by the Commissioner are referred to as "Tr."

trying hard but I can coax her to almost 5/5 with encouragement." *Id.* at 314. EMG and nerve conduction testing on Ms. Branson's right arm produced "normal" results. *Id.* at 315-16.

In March 2001, Ms. Branson was referred by Disability Determination Services (DDS) to Dr. James Wahl for a psycho-diagnostic evaluation. Dr. Wahl concluded she has a "Probable Borderline IQ," but that "while she would probably not be able to carry out complex or detailed instructions her concentration and memory are grossly intact and she appears capable of understanding, remembering and carrying out short and simple instructions." *Id.* at 348; *see also id.* at 357 (DDS Mental Residual Functional Capacity Assessment concluding Ms. Branson is "capable of understanding and carrying [sic] simple instructions"). At the time, Ms. Branson "denied significant emotional disturbance and no signs of such disturbance were evident." *Id.* at 349.

Ms. Branson was further referred to Dr. David Truhn for a comprehensive psychological evaluation in June 2003. Dr. Truhn administered a Wechsler Adult Intelligence Scale-III, a Multiphasic Personality Inventory-2, a Comprehensive Trail Making Test, a mental status examination, and a clinical interview. He also reviewed her medical records and incorporated them into his analysis. Ms. Branson told Dr. Truhn that she had been physically and sexually abused, and that she had a history of drug and alcohol use. She also described her problems with anxiety and depression and shoulder, back, and neck pain. Dr. Truhn concluded her personality test results were invalid as her responses indicated "severe psychosis, resistence to the test taking procedures, or exaggeration of symptoms." *Id.* at 417. Testing revealed Ms. Branson's Full Scale I.Q. is likely 79-87, and Dr. Truhn concluded that "she is functioning in the low average range of intellectual abilities when compared to others her own age." *Id.* at 419. Further,

recognizing that she previously denied having any "significant emotional difficulties" to Dr. Wahl, Dr. Truhn concluded that she "seems to experience significant psychological issues regarding posttraumatic stress disorder with underlying long-term depression and panic and social phobia," which "limit her mobility in the community, social interaction and concentration and attention." *Id.* Dr. Truhn gave Ms. Branson a "poor" prognosis stating that her "cognitive impairment may affect her ability to benefit from long-term rehabilitative efforts." *Id.* at 420.

Starting in December 1998 and continuing through 2002, Ms. Branson received treatment from Nurse Practitioner (N.P.) Vandervort. In 2002, N.P. Vandervort submitted a Physical RFC Questionnaire in preparation for her disability proceedings. In this questionnaire, N.P. Vandervort reported that Ms. Branson suffers from "Snapping Shoulder Syndrome, Hyper mobility of both scapulas, Anxiety and/or Panic Disorder, Asthma, Osteoarthritis, Headaches, and GERD." *Id.* at 381. He also stated that her allegations of pain, numbness, headaches, and difficulties with depression, including her inability to "muster the strength to overcome [her] anxiety and go out of the house and deal with people" an average of "10 days a month," were consistent with her medical diagnosis. *Id.* at 382-83. However, he stated that her allegations regarding her abilities to stand, sit, and lift weight without severe pain were not consistent with her medical diagnosis and were not credible. *Id.* at 384-85.

**II.     Standards**

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner must conduct a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b). In Step Two, the claimant is not disabled if the Commissioner determines the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.945(a); *see also* Social Security Ruling (SSR) 96-8p. In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e). If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that

exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e), (f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(f)(1).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

IV.     The ALJ's Decision

The ALJ found that Ms. Branson had not performed any substantial gainful activity since December 30, 2000. He also found that while she has several severe impairments, including "hypermobility, mild cervical stenosis, obesity, and asthma," none of them meets or equals the relevant Listing of Impairments. Tr. at 22. Next, the ALJ reviewed the medical evidence and

assessed Ms. Branson's RFC, finding that she has various physical limitations,[2] and "additional moderate limitations understanding, remembering, and carrying out detailed instructions, interacting appropriately with the public, and independently formulating plans and goals, but that "she could do a clerical job at a desk." *Id.* at 26. In so finding, he concluded that Ms. Branson's allegations as to her condition were "not . . . fully credible," *id.*, and he gave little weight to Dr. Truhn's report as it contradicted other medical evidence in the record and was largely based on Ms. Branson's subjective statements. The ALJ also gave little weight to N. P. VanDervort's opinion as he is not an "appropriate medical source" and his findings were also based largely on Ms. Branson's statements. Finally, based on this assessment and the testimony of VE Francene Gomez, the ALJ concluded that while she is unable to perform the type of work she has in the past, there are several jobs Ms. Branson could perform[3] that exist in substantial numbers in the economy.

---

[2] The evidence has established that the claimant is limited from lifting and carrying more than 10 pounds frequently with an occasional 20 pound maximum. She has an additional limitation from repetitive lifting, especially from the floor or overhead, or at full extension or close to full extension in front of her. . . . She is limited to occasional ladder climbing, bending, crawling, and gripping and seizing above the shoulder level. She needs to avoid extreme cold or excessive dust, or smoke.

*Id.* at 26.

[3]The ALJ identified the following possible jobs: office helper, bindery machine feeder, folding machine operator for laundry goods, folding machine operator for paper products, document preparer for microfilm, and addresser. *Id.* at 27.

PAGE 7 - OPINION AND ORDER

V.  Analysis

Ms. Branson contends the ALJ erred by: (1) finding that she lacked credibility, (2) giving little weight to Dr. Truhn's and N.P. Vandervort's opinions, (3) rejecting other lay testimony, (4) improperly assessing the severity of her impairments, and (5) providing the VE with a deficient hypothetical.  The Commissioner contends the ALJ's decision is supported by substantial evidence and free from legal error.

A.  Ms. Branson's Credibility

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  In determining credibility, the ALJ may use the "'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 604 n.5).  When the ALJ rejects claimant's subjective statements, he must provide "specific, convincing reasons." *Id.*

Here, the ALJ found Ms. Branson's subjective statements about her condition "not . . . fully credible" for a variety of reasons.  Tr. at 26.  First, the ALJ pointed to inconsistencies between her statements to Dr. Wahl and Dr. Truhn.  Specifically, she denied having any mental problems to Dr. Wahl, and then reported incapacitating mental problems, including panic attacks to Dr. Truhn.  She also told Dr. Wahl that her "AA and NA meetings were a positive element of her life and a source of significant emotional support," *id.* at 25, and later told Dr. Truhn that she often gets nervous and experiences panic attacks when attending these meetings.

The ALJ also noted several indications in the medical reports that Ms. Branson had not accurately represented her condition.  For example, Dr. Bufton's report indicated that she

PAGE 8 - OPINION AND ORDER

performed under her physical abilities during her examination. *Id.* at 314 ("On physical examination [Ms. Branson] gives a weak grip with the right hand and becomes tremulous as though she is really trying hard but I can coax her to almost 5/5 with encouragement."). Similarly, N.P. Vandervort stated in his RFC Questionnaire that some of Ms. Branson's alleged limitations were not consistent with her medical diagnosis, and that her reports were not credible. Dr. Truhn's report also indicated she may have given inaccurate responses to the personality test he administered. *Id.* at 417 (concluding Ms. Branson's personality test was invalid as her responses indicated either "severe psychosis, resistance to the test taking procedures, or *exaggeration of symptoms*") (emphasis added).

Further, the ALJ cited Ms. Branson's prior illegal drug activity, and the inconsistency between her allegations of significant emotional and mental impairments and her failure to seek appropriate treatment beyond psychotropic medication, as evidence that she lacks credibility. *See Fair*, 885 F.2d at 603 ("unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is evidence the claimant lacks credibility).

As is evident, the ALJ has provided specific reasons for rejecting Ms. Branson's subjective statements. And taken together, the facts relied on by the ALJ establish "such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion that she is not credible. *Andrews*, 53 F.3d at 1039. Thus, the ALJ did not err in finding she lacked credibility.

### B. Dr. Truhn's and N.P. Vandervort's Opinions

#### 1. Dr. Truhn

The ALJ is responsible for resolving conflicts in the medical evidence. *Edlund v.*

*Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). In rejecting the contradicted opinion of an examining physician, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995) (citation omitted). Here, Dr. Truhn is an examining physician–as opposed to a treating physician–because his only interaction with Ms. Branson was the comprehensive psychological examination he conducted. *See id.* at 830 (defining different categories of physicians for purposes of assessing medical evidence in social security benefits cases). Based on his examination, Dr. Truhn concluded that Ms. Branson suffers from severe mental impairments and a debilitating functional impairment limiting her ability to perform some of the basic functions of unskilled work. This conclusion is contradicted by other evidence in the medical record. Specifically, Dr. Wahl–also an examining physician–found that while she has borderline intellectual capabilities, Ms. Branson's limitations stem from physical problems "rather than [from] any psychological or emotional condition[s]." Tr. at 348. Consistent with the agency's RFC assessment, Dr. Wahl found that she is capable of performing work involving short and simple instructions. In addition to the contradiction between opinions, the ALJ concluded that Dr. Truhn's report was deficient because he based his findings largely on Ms. Branson's subjective statements, he failed to account for the effect a recent tragedy in her life had on her mental and emotional condition, and he failed to address whether continued substance abuse rehabilitation might improve her condition. Thus, the ALJ found that Dr. Truhn's opinion was "insufficient to question the findings of Dr. Wahl's earlier evaluation and subsequent DDS reviewing source opinions," and accorded it little weight. *Id.* at 25-26.

       The ALJ has given specific, legitimate reasons for resolving the conflicting medical

evidence by giving less weight to Dr. Truhn's opinion. The record clearly demonstrates that Dr. Truhn gave significance to Ms. Branson's self-assessment, and as discussed above, there is substantial evidence supporting the ALJ's conclusion that her statements were not credible. Likewise, the failure to consider relevant facts in his report is a proper basis for giving less credit to Dr. Truhn's opinion.

### 2. N.P. Vandervort

The ALJ also gave limited weight to N.P. Vandervort's opinion concluding that as a nurse practitioner, he is not a "medical source" under the regulations. Nurse practitioners are not "medical sources," and as such, their opinions are properly afforded less weight. 20 C.F.R. § 404.1513 (excluding nurse practitioner from "acceptable medical source" and including it in definition of "other sources"); *see also Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). However, as with other lay testimony, the ALJ must give specific reasons that are germane to the witness before rejecting the evidence. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)). Here, the ALJ explained that it was not crediting N.P. Vandervort's opinion because his responses to the Physical RFC Questionnaire were inconsistent, and his view of the severity of Ms. Branson's physical condition was in conflict with the nerve conduction studies performed by Dr. Bufton. Further, even though requested, N.P. Vandervort's supervising physician did not sign his report.

The ALJ's stated reasons for giving limited weight to this evidence are germane to N.P. Vandervort. Likewise, the court concludes these reasons are sufficient to support the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (contradiction by medical evidence is legitimate reason for rejecting lay opinion); *see also Gomez*, 74 F.3d at 371 (nurse

practitioner's opinion given more weight where shown nurse practitioner worked with supervising physician).

### C. Lay Testimony

Next, Ms. Branson contends the ALJ erred in failing to consider lay testimony given by her estranged husband, Charles Branson, and her friends, Sandi Gillespie and John Kima. The ALJ is required to consider lay testimony in determining whether a disability exists. *Dodrill*, 12 F.3d at 919; 20 C.F.R. § 404.1513(d). And as stated above, the ALJ must give specific reasons germane to the witness before rejecting lay testimony. *Nguyen*, 100 F.3d at 1467 ("Lay testimony as to a claimant's *symptoms* is competent evidence which the [Commissioner] must take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'") (citations omitted). Plaintiff is correct that the ALJ failed to perform this obligation. Indeed, the ALJ's opinion never even mentions these witnesses. However, the court finds this error is not reasonably likely to have impacted the outcome of this case. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (harmless error standard applies) (citations omitted). These witnesses primarily described their observations of Ms. Branson's physical pain and limitations, and the ALJ incorporated many of the facts alleged by them in his decision. Further, none of them specifically addressed her limitations in a work-place setting. Thus, they add little to the record in this case, and it is unlikely the ALJ would arrive at a different decision on remand.

### D. Assessment of Impairments

Ms. Branson also contends the ALJ wrongly assessed the severity of her impairments. In support of this assertion, she argues first that the ALJ erred in stating she has a "history of

headaches," where there is no evidence in the record demonstrating her headaches have ceased. Second, she argues the ALJ's rejection of Dr. Truhn's opinion rendered his assessment of her impairments erroneous. The court previously addressed the ALJ's treatment of Dr. Truhn's opinion, finding no error. Thus, her argument on this point fails. Likewise, the court finds no error in the ALJ's conclusion that she has a "*history* of headaches." Nothing in the ALJ's opinion indicates he viewed her asserted problems with headaches as a thing of the past. Rather, he concluded that her "history of headaches," "history of []substance abuse," "history of dysthymia/depression," and "history of anxiety/panic" *are* severe impairments within the definition of the Regulations. Tr. at 22. Thus, Ms. Branson's real contention with the ALJ on this point is with his finding that her headaches do not meet or equal one of the listed impairments supporting a finding of disability. *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). However, as she has not pointed to any evidence establishing that her headaches satisfy this standard, the court finds no error in the ALJ's assessment. *Roberts*, 66 F.3d at 182 (9th Cir. 1995) (plaintiff bears initial burden to establish disability).

### E. VE Hypothetical

Finally, Ms. Branson argues the ALJ improperly omitted several limitations from the hypothetical posed to the VE, and as such, erroneously concluded she can perform work existing in significant numbers in the national economy. Again, this argument is based on Ms. Branson's assertion that the ALJ improperly rejected evidence establishing her limitations, i.e., Dr. Truhn's opinion, N.P. Vandervort's opinion, her testimony, and other lay witness testimony. As the court has already addressed and rejected all of these arguments, the court finds no error in the ALJ's exclusion of this evidence from the VE's hypothetical, or in the ALJ's conclusion that she is not

disabled.

**VI.     Conclusion**

The ALJ did not err in finding Ms. Branson lacked credibility or in giving limited weight to Dr. Truhn's and N.P. Vandervort's opinions.  The ALJ did err in failing to provide specific reasons for rejecting the other lay testimony submitted; however, based on the record, the court concludes this error has not effected the outcome in this case.  Finally, the court concludes the ALJ did not err in assessing Ms. Branson's impairments or presenting the hypothetical to the V.E.  The Commissioner is AFFIRMED.

DATED this   27th    day of September, 2005.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge